**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KHODR INVESTMENTS, LLC, ET AL.,**
**Plaintiffs**

**VERSUS**

**STARR SURPLUS LINES INSURANCE COMPANY,**
**Defendant**

**CIVIL ACTION**

**NO. 22-2251**

**SECTION: "E"(4)**

## ORDER AND REASONS

Before the Court is a motion to dismiss[1] filed by Defendant Starr Surplus Lines Insurance Company ("Defendant"). Plaintiffs Khodr Investments, LLC, et al. ("Plaintiffs") filed an opposition.[2] Defendant filed a reply.[3]

## BACKGROUND

Defendant issued to Plaintiffs an "all risks" commercial insurance policy with a policy period from March 21, 2019, to March 21, 2020 ("the policy").[4] The policy provided Plaintiffs with a combined coverage limit in excess of eighteen million dollars.[5] In late 2019, the novel coronavirus SARS-COV-2 began circulating, and in March 2020, Louisiana public officials began issuing proclamations to respond to the public health crisis.[6] As a result of the COVID-19 pandemic and the various proclamations, Plaintiffs suspended business operations for on-premises dining at its restaurants from March 17

[1] R. Doc. 22.
[2] R. Doc. 31.
[3] R. Doc. 36.
[4] R. Doc. 16 at p. 3.
[5] *Id.*
[6] *Id.* at p. 6.

to May 14, 2020, in Jefferson Parish, and from March 17 to May 15, 2020, in Orleans Parish.[7]

Plaintiffs allege the presence of the coronavirus at their locations and at properties within one mile of Plaintiff's locations "caused direct physical loss and damage to the insured locations, both by depriving the use of and damaging the insured locations."[8] Plaintiffs further allege "[t]he various proclamations, notices, and orders issued by the Governor of Louisiana, by the Mayor of New Orleans, and by the President of Jefferson Parish were orders of civil authority that interrupted Khodr's business due to a direct result of damage to or destruction of property within one mile."[9] Finally, Plaintiffs allege "[d]amage to property within one mile of Khodr's property impaired ingress to or egress from the locations."[10]

On March 21, 2020, Plaintiffs gave initial notice of its losses to Defendant.[11] Defendant has not yet accepted coverage nor paid insurance proceeds for Plaintiffs' allegedly covered losses.[12] Plaintiffs filed suit in state court on March 17, 2022.[13] On July 20, 2022, Defendant removed the case to this Court from the Louisiana Civil District Court for the Parish of Orleans.[14] On September 14, 2022, Defendant filed the instant motion to dismiss for failure to state a claim.[15]

---

[7] *Id.* at p. 15.
[8] *Id.* at pp. 15-16.
[9] *Id.* at p. 16.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] R. Doc. 1-1 at p. 6.
[14] R. Doc. 1.
[15] R. Doc. 22.

## LEGAL STANDARD

### I. Legal Standard for Rule 12(b)(6) Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of her claim that would entitle her to relief.[16] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[17] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[18] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[19] "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[20]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[21] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).
[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[18] *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).
[19] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[20] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[21] *Twombly*, 550 U.S. at 555.

shown—that the pleader is entitled to relief."[22] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[23]

## II. Legal Standard for Interpreting Insurance Contracts Under Louisiana Law

Under Louisiana law, an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[24] Under Louisiana law, interpretation of an insurance contract is generally a matter of law.[25] "The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy."[26] "Obviously, the initial determination of the parties' intent is found in the insurance policy itself."[27]

Words and phrases in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.[28] "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, courts must enforce the contract as written," and courts do not have the authority "to alter the terms of an insurance contract under the guise of contractual interpretation when the contract's provisions are couched in unambiguous terms."[29] "Ambiguous terms in an insurance contract are construed liberally in favor of

---

[22] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (internal quotations omitted).
[23] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam).
[24] *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003–1801 (La.2/25/04), 869 So.2d 96, 99.
[25] *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 910.
[26] *Peterson v. Schimek*, 98–1712, p. 4 (La.3/2/99), 729 So.2d 1024, 1028 (citing La. Civ. Code art. 2045).
[27] *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So. 2d 119, 124, *opinion corrected on reh'g*, 2000-0947 (La. 3/16/01), 782 So. 2d 573.
[28] *See* La. Civ. Code art. 2047; *see also Doerr*, 774 So.2d at 124.
[29] *Succession of Fannaly v. Lafayette Ins. Co.*, 2001-1355 (La. 1/15/02), 805 So. 2d 1134, 1137–38.

the person claiming coverage."[30] An ambiguity in an insurance policy exists when a provision or term in question can be reasonably construed in two different ways.[31] The question of whether an insurance contract is clear or ambiguous is a question of law.[32]

To recover on an insurance policy, an insured bears the burden of proving that its loss is covered by the policy.[33] If the insured meets this burden, the insurer then has the burden of proving the applicability of policy exclusions.[34]

**LAW AND ANALYSIS**

For the reasons that follow, Plaintiffs have failed to demonstrate their COVID-19-related losses are covered under the insurance policy issued by Defendant.

**I. The Policy.**

The policy issued to Plaintiffs by Defendant is an all-risk commercial insurance policy[35] under which coverage is generally triggered if there is "'direct physical loss or damage to' covered property."[36] Plaintiffs seek the payment of insurance proceeds, and statutory penalties and attorneys' fees.[37] Plaintiffs allege they are entitled to coverage under three sections of the Policy, namely the Business Interruption Section, the Extra Expense Endorsement, and the Ingress/Egress Endorsement.

Both the Business Interruption Section and the Extra Expense Endorsement provide coverage for actual loss sustained by "direct physical loss or damage to covered property," and for damages when "access to such described premises is specifically

---

[30] *Capitol Anesthesia Grp., P.A. v. Watson*, 2008-1159 (La. App. 3 Cir. 3/4/09), 7 So. 3d 51, 54, *writ denied*, 2009-1088 (La. 9/18/09), 17 So. 3d 974 (citing *Westerfield v. LaFleur*, 493 So.2d 600 (La.1986)).
[31] *Id.* (citing *McCarthy v. Berman*, 95–1456 (La.02/28/96), 668 So.2d 721.)
[32] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So. 2d 577, 580.
[33] *Doerr*, 774 So. 2d at 124.
[34] *Id.*
[35] R. Doc. 16 at p. 3.
[36] R. Doc. 22-1 at p. 3.
[37] R. Doc. 16 at pp. 17, 19.

prohibited by order of civil or military authority."[38] Additionally, the Business Interruption Section, according to Plaintiffs, "is coverage for lost business income caused by a covered cause of loss, as well as reasonable and necessary expenses incurred, which would not have been incurred but for the covered cause of loss."[39] More specifically, this Section covers loss "caused by direct physical loss or damage to real or personal property."[40] Second, the Extra Expense Endorsement covers the "reasonable and necessary extra expense . . . in order to continue as nearly as practicable the normal operation of the Insured's business following direct physical loss or damage or real or personal property."[41]

Finally, the Ingress/Egress endorsement provides:

> This POLICY is ***extended*** to cover the ACTUAL LOSS SUSTAINED during the period of time, starting at the time of the ***physical damage***, not exceeding [30 consecutive days] when ***as a direct result of loss or damage*** by a peril insured against to property of a type insured against within one (1) mile of an INSURED LOCATION, ***ingress to or egress from the premises insured is impaired irrespective of whether the premises or property insured shall have been damaged***.[42]

Critically, the coverages identified by Plaintiffs are triggered only by "direct physical loss of or damage to" property. As a result, the question before the Court is whether, under Louisiana law, the Coronavirus pandemic and related governmental lockdown orders trigger coverage under an all-risk commercial insurance policy providing coverage for "direct physical loss of or damage to property." The Court has previously answered this question in the negative and does so again today.[43]

---

[38] R. Doc. 22-1 at pp. 6-8.
[39] *Id.* at p. 13.
[40] R. Doc. 22-1 at p. 6.
[41] *Id.* at pp. 7-8.
[42] R. Doc. 16 at p. 14 (emphasis in original) (emphasis added).
[43] *St. Tammany Parish Hosp. Serv. Dist. No. 2 v. Zurich Am. Ins. Co.*, No. 21-2204, 2022 WL 860416 (E.D. La. Mar. 23, 2022).

## II. Plaintiffs Have Not Demonstrated "Direct Physical Loss of or Damage to" Their Property and, as a Result, Plaintiffs Have Not Demonstrated A Covered Loss.

Defendant states it is entitled to dismissal because Plaintiffs have failed to allege coverage under the terms of the policy, arguing the presence of COVID-19 on Plaintiffs' property does not qualify as "direct physical loss or damage."[44] In opposition, Plaintiffs argue only that the Court should stay the instant action pending the outcome of *Cajun Conti, LLC v. Certain Underwriters at Lloyd's, London*,[45] a decision by the Louisiana Court of Appeal for the Fourth Circuit in which there is a pending writ application to the Louisiana Supreme Court.[46] The writ application presents for the first time the opportunity for the Louisiana Supreme Court to determine whether the presence of COVID-19 qualifies as "direct physical loss or damage."[47]

Although the Louisiana Supreme Court has not addressed the issue, multiple federal courts, including other sections of this Court and the Fifth Circuit have applied this narrow definition of "physical loss of or damage to" property in commercial insurance disputes involving business losses attributable to the Coronavirus pandemic.[48] Notably, because the Louisiana Supreme Court has not yet decided the issue, the United States Court of Appeals for the Fifth Circuit took an *Erie* guess in *Q Clothier New Orleans LLC*

---

44 R. Doc. 22-1 at p. 12.
45 R. Doc. 31 at pp. 5-8.
46 *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, No. 2021-CA-0343, 2022 WL 2154863 (La. App. 4 Cir. June 15, 2022).
47
48 *See, e.g.*, *Ford of Slidell, LLC v. Starr Surplus Lines Ins. Co.*, No. CV 21-858, 2021 WL 5415846, at *7 (E.D. La. Nov. 19, 2021) ("Numerous district courts have likewise read this requirement for tangible damages to apply in the context of COVID-19 closure orders."); *Pierre v. Transp. Ins. Co.*, No. 20-1660, 2021 WL 2754651, at *1 (W.D. La. July 1, 2021) ("[T]here is a universe of Louisiana jurisprudence concerning pandemic-related business interruption claims wherein the courts have held that COVID-19 pandemic does not cause direct physical loss of or damage to property."); *Lafayette Bone & Joint Clinic, Inc. v. Transp. Ins.* Co., No. 21-317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("[E]very district court within the circuit to address the issue has determined that a building's exposure to the coronavirus does not meet this requirement.").

*v. Twin City Fire Insurance*.[49] Another section of this Court described in detail the Fifth Circuit's *Erie* guess in *Q Clothier*:

> The *Erie* guess presented in this case . . . has already been made by the Fifth Circuit in the COVID-19 context – examining the exact policy language as is at issue here – both before and after the Louisiana appellate court's decision in *Cajun Conti*. Prior to *Cajun Conti*, the Fifth Circuit in *Q Clothier* concluded that the Louisiana Supreme Court would interpret "direct physical loss of or damage to property" to mean "only *tangible* alterations of, injuries to, or deprivations of property." The court upheld the dismissal of the plaintiff's COVID-19-related business interruption claim after expressly finding that the "direct physical loss of or damage to property" language was "unambiguous." In coming to this conclusion, the Fifth Circuit relied upon other Louisiana appellate court decisions holding that a tangible alteration of the covered property was required to trigger coverage under policies containing the "direct physical loss of or damage to property" language. . . . In addition, the court reasoned that "Q Clothier's property was unchanged by the government orders or the close of its stores."[50]

Following *Q Clothier*, this Court and others reached the same conclusion, creating a body of jurisprudence in agreement that COVID-19 does not cause physical damage or loss to property.[51]

However, several months after *Q Clothier*, a Louisiana appellate court decided *Cajun Conti* and concluded the phrase "direct physical loss of or damage to property" was ambiguous and that the phrase could reasonably be interpreted to include COVID-19-related losses.[52] Notably, however, the court in *Cajun Conti* did not definitively determine that the presence of COVID-19 *constituted* "direct physical loss of or damage to property,"

---

[49] 535 F. Supp. 3d 574 (E.D. La. 2021).

[50] *Exceptional Dental of La., LLC, et al. v. Bankers Ins. Co.*, No. 22-3, 2022 WL 4774645, at *9-10 (E.D. La. Oct. 3, 2022).

[51] *Muriel's New Orleans, LLC v. State Farm Fire & Casualty Company*, 535 F. Supp. 3d 556, 558 (E.D. La. 2021) (granting the defendant's motion to dismiss, noting the policyholder failed to sufficiently allege direct physical loss to the covered property as a result of COVID-19); *Ford of Slidell*, No. CV 21-858, 2021 WL 5415846, at *1; *Coleman E. Adler & Sons, LLC v. Axis Surplus Ins. Co.*, No. CV 21-648, 2021 WL 2476867, at *2 (E.D. La. June 17, 2021) (citing *Q* Clothier, 535 F. Supp. 3d 574) (granting the insurer's motion to dismiss, finding the presence of COVID-19 on the insured premises did not constitute direct physical loss).

[52] *Cajun Conti*, No. 2021-CA-0343, 2022 WL 2154863, at *16-17.

but only that the language of the insurance policy was ambiguous.[53] Plaintiffs hang their hat on the Louisiana Fourth Circuit's decision in *Cajun Conti*, asking this Court to stay the instant action pending the outcome of the writ application. However, as described in further detail in this Court's Order denying Plaintiff's Motion to Stay, courts in the Fifth Circuit have "continued to reaffirm the *Erie* guess it outlined in *Q Clothier*, even after *Cajun Conti* and in the face of its *potential* review by the state's highest court."[54]

This Court holds the presence of COVID-19 does not cause "physical loss of or damage to" property. Because Plaintiffs are unable to demonstrate a covered loss, the Court finds they are not entitled to insurance proceeds. Moreover, the Court reiterates its conclusion that a stay pending the outcome of *Cajun Conti* is not warranted. Accordingly, the Court finds Plaintiffs have failed to demonstrate a claim to relief plausible on the face of the complaint.[55]

## CONCLUSION

**IT IS ORDERED** that the motion to dismiss[56] filed by Defendant is **GRANTED.**

**New Orleans, Louisiana, this 15th day of November, 2022.**

Susie Morgan

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

53 *Id.*
54 *Exceptional Dental*, No. 22-3, 2022 WL 4774645, at *8.
55 Because the Court rejects Plaintiffs' argument that they suffered a physical loss, the Court need not reach the issue of whether Plaintiffs' alleged damages fell within the contamination exclusion. However, even if Plaintiffs successfully demonstrated a physical loss, Plaintiffs would not be entitled to coverage. The insurance policy specifically excludes coverage of damage caused by viruses. Accordingly, Plaintiff would not be entitled to recover, even if the presence of COVID-19 constituted physical damage. *See Ford of Slidell*, No. CV 21-858, 2021 WL 5415846, at *20-24 (finding the Contamination Clause "unambiguously excludes coverage for losses resulting from COVID-19," where the language and the legal arguments were the same as in the instant motion).
56 R. Doc. 22.